UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | 5:25-mj-01357-ESC |
| v. | |
| **LAURENT LANT,** | |
| **Defendant.** | |

### GOVERNMENT'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S BOND DECISION, MOTION FOR *DE NOVO* DETENTION HEARING AND MOTION FOR STAY OF ORDER SETTING BOND

Comes now the United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, and files the Government's Motion for Review of Magistrate Judge's Bond Decision, Motion for *de novo* Detention Hearing, and Motion for Stay of Order Setting Bond and would respectfully show the Court the following:

### I.   INTRODUCTION

The Government moves this Court to revoke the Order Setting Conditions of Release entered by United States Magistrate Judge Henry Bemporad ("Judge Bemporad") on October 8, 2025, which set conditions for Defendant's release on bond over the Government's objection; to grant the Government a *de novo* hearing for detention pending trial, pursuant to Title 18, U.S.C., Section 3145; and to continue to detain and hold the Defendant without bail, pursuant to Title 18 U.S.C. Section 3142(e) and (f). Additionally, the Government moves this Court to immediately stay the execution of Magistrate Judge Bemporad's Order Setting Conditions of Release.

### II. PROCEDURAL BACKGROUND

On September 26, 2025, Laurent Lant was charged via complaint with Theft of Government

Money or Property, in violation of Title 18, United States Code, Section 641. The Government filed a Motion to Detain Lant without bond based on a substantial risk of flight. At the detention hearing on October 8, 2025, the Government presented evidence and argument regarding Lant's commission of the offense, which included the following:

1. Lant exploited his position as the Chief of Banking, Investments, and Insurance for the U.S. Army's Installation Management Command ("IMCOM") G9 to embezzle large amounts of money from the Army.

2. Lant attempted to disguise unauthorized transfers of funds by describing them as being for Army facilities that had been damaged by Hurricane Helene on Fort Gordon, Georgia.

3. Zurich Insurance was the commercial insurer responsible for claims related to hurricane damage on Fort Gordon.

4. Lant created a fictitious company named "Zurich Consulting, LLC" to serve as a pass-through entity between the Army and his personal bank accounts. The similarity between the name of Lant's fictitious company and Zurich Insurance was calculated to help Lant's transfers evade detection.

5. On or about February 6, 2025, Lant embezzled $510,000 from Army funds.

6. After Lant's arrest, investigators discovered another $350,000 that Lant had embezzled in one day in or around May 2025. To date, investigators have discovered $860,000 that Lant misappropriated from Army funds. The investigation remains ongoing.

Lant presented no evidence regarding probable cause and conceded the Government had met its burden. The Government also presented evidence and argument regarding Lant's risk of flight, which included the following:

1. Though he was a naturalized United States citizen, Lant was from Benin.

2. On September 24, 2025, Lant's superiors at IMCOM G9 seized his electronic devices and

common access card, and placed him on administrative leave.

3. Beginning that same day, and going into September 25, 2025, Lant transferred $150,000 to an account in his wife and child's names; withdrew $28,500 in cash, and booked a plane ticket with travel insurance to Benin departing the United States on September 25, 2025.

4. Agents found Lant on September 25, 2025, at his residence in Cibolo before he was able to depart for the airport. Agents asked Lant whether he had any travel plans. Lant denied having any plans to travel, which was a lie.

5. Agents asked Lant's wife if he had any travel plans. She hesitated, then said they were planning to travel in the next few months. After agents asked her again, she admitted that Lant booked a trip to Benin just after he was placed on leave. Lant's wife stated that Lant was the only member of their family who was going on that trip.

6. Agents determined that Lant also transferred several thousand dollars to a bank in Benin, apparently for his own benefit.

7. The defense presented no witnesses, but proffered evidence that Lant's flight to Benin was booked as a round-trip ticket.

8. The Government argued the evidence of Lant's guilt was strong and only likely to improve if investigators discovered evidence of additional embezzlement, and therefore, that the likelihood of conviction created a strong incentive to flee. The Government added that Lant had the ability to flee, considering his ties to Benin, transfer of money to an account in Benin, substantial cash withdrawals, and the fact that investigators still did not know how much money he had misappropriated to date. The Government then argued that perhaps more important than the motive and opportunity to flee was the fact that Lant was arrested while trying to flee. His claim at the detention hearing that he was merely traveling home to visit family and friends was belied by the fact that he denied having travel

plans at all when agents confronted him. The Government further argued that Lant's attempts to deceive the agents about his travel plans and his extensive deception in the commission of the offense made him untrustworthy and unlikely to abide by the Court's conditions.

9. Through counsel, Lant countered that according to his initial guideline calculations, a likely prison sentence of only a few years would not create an incentive for Lant to flee. Lant further argued that he would not abandon his wife and young child, notwithstanding the evidence that he booked a ticket to Benin without them immediately after being placed on administrative leave and transferring $150,000 to a bank account in their names.

Judge Bemporad ordered Lant released.

### III. ARGUMENT AND AUTHORITIES

The District Court's review of a release order is *de novo*. *U.S. v. Thibodeaux*, 663 F.2d 520 (5th Cir. 1981). "Moreover, the rule of *de novo* determination by the district court applies not only when the accused challenges the magistrate's order, but also when the government does, as it is authorized to do so by [18 U.S.C.] 3145(a)(1)." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985), citing *United States v. Delker*, 757 F.2d 1390, 1394 (3rd Cir. 1985). A determination that there are no conditions or combinations of conditions which will reasonably assure the appearance of the defendant at future court settings is based on a preponderance of the evidence. *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985). A defendant may be detained without bond where there is a "lack of reasonable assurance of *either* the defendant's appearance *or* the safety of others or the community." *Fortna*, 769 F.2d at 249. (emphasis in the original.)

On October 9, 2025, the Government requested a transcript of the detention hearing that occurred on October 8, 2025. As of the time of the filing of this Motion, a transcript has not been completed. This transcript is vital to the determination of this appeal because it is a comprehensive

record of the evidence that was before Judge Bemporad when he granted release. Upon completion of the transcript, the Government will submit the same to this Court along with any necessary supplemental briefing, including exhibits such as the pre-trial services report.

Since the transcript may take some time to prepare, and because the Government believes Defendant will flee the jurisdiction of this Court, the Government requests an immediate stay of Judge Bemporad's Order Setting Conditions of Release. If this Court grants a *de novo* hearing, the Government would present substantially similar evidence in support of its motion for detention.

## IV. CONCLUSION

The evidence of Lant's guilt is overwhelming. Considering Defendant's motive and opportunity to flee, and his attempt to flee, detention without bond is warranted and necessary to assure Defendant's appearance in Court.

WHEREFORE, premises considered, the Government respectfully prays the Court to grant the Government's Motion in all respects, to Stay the Order Setting Bond, to hold and detain the Defendant without bail pending the *de novo* detention hearing, and to thereafter detain the Defendant without bond.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

BY:      /s/
ERIC YUEN
Assistant U.S. Attorney
600 NW Loop 410, Ste 600
San Antonio, Texas 78216

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 9, 2025, a true and correct copy of the foregoing instrument will be filed on the CM/ECF system, which will provide notification to the attorneys of records on this case.

                                                     /s/
                                       Eric Yuen
                                       Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | 5:25-mj-01357-ESC |
| v. | |
| **LAURENT LANT,** | |
| **Defendant.** | |

**O R D E R**

On this date, came on to be considered the Government's Motion for Review of Magistrate Judge's Bond Decision, Order Setting Bond, Motion for *de novo* Detention Hearing and Motion for Stay of Order Setting Bond. Having considered the Motion, the Court is of the opinion that the Motion is meritorious and should be granted.

IT IS THEREFORE ORDERED that the Order Setting Conditions of Release is stayed.

IT IS FURTHER ORDERED that the Motion for a *de novo* Detention Hearing is granted and will be set on a later date pending the filing of the transcript of the Detention Hearings.

SIGNED AND ENTERED this the _____ day of October, 2025.


_____
FRED BIERY
UNITED STATES DISTRICT JUDGE